# WHEELING.

## Wandling v. Straw & Morton.

Submitted June 23, 1884.—Decided April 18, 1885.

1. The validity of a judgment of a court of record can not be collaterally attacked, on the ground that the court had no jurisdiction, unless the want of jurisdiction appears upon the face of the record. (p. 704.)

2. If it appears by the record that an attorney appeared for the defendant in a court of general jurisdiction, such appearance gives the court jurisdiction of the person of the defendant; and if the attorney so appeared without his authority, that fact can not be shown as a defence at law in any action or proceeding upon the judgment, where the same may properly be used as evidence of the right thereby established. (p. 703.)

3. In any action or proceeding at law upon a judgment of a court of general jurisdiction between the parties thereto, in which such judgment may properly be used as evidence of the right thereby established, the defendant as a matter of defence at law can not show, that the court did not acquire jurisdiction of the defendant, except by an inspection of the record. (p. 704.)

4. A judgment upon the merits of the case is a bar or estoppel against a prosecution of a second action upon the same demand, and is a finality to the claim or demand in controversy and concludes parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim, but also any other admissible matter which might have been used for that purpose; such demand or claim having passed into judgment can not again be brought into litigation between the parties in proceedings at law upon any ground whatever. (p. 707.)

5. These principles apply with equal force as well to judgments of the inferior courts of record of the United States rendered in this State between parties subject to their jurisdiction, as to judgments of the circuit courts of this State. (p 705.)

6. Where all the evidence introduced by the plaintiff on the trial of his action, is clearly insufficient to sustain a verdict in his favor, should such verdict be rendered, it is error in the court to overrule the defendant's motion to exclude such evidence from the jury, if made before any evidence be offered on behalf of the defendant. (p. 708.)

7. In a case where all the evidence introduced on the trial is clearly insufficient to warrant a verdict in favor of the plaintiff, and the

jury nevertheless finds a verdict in favor of the plaintiff, it will be error to overrule the motion of the defendant to set the same aside and grant him a new trial.   (p. 708.)

WOODS, JUDGE, furnishes the following statement of the case:

On September 8, 1870, James W. Wandling and Straw & Morton entered into the following agreement:

"Agreement made the eight (8) day of September, 18—, by and between Straw & Morton, of Pittsburgh, of the first part, and James W. Wandling, of the second part, witnesseth:

"That Straw & Morton hereby agree to employ the said party of the second part, and the party of the second part agrees to enter into the employment of said Straw & Morton for the period of one year for the following purpose and upon the following terms and conditions, to-wit: The party of the second part agrees to devote his whole time industriously in canvassing and obtaining purchasers for Singer's sewing machines, of which the said Straw & Morton have the agency or right of sale within western Pennsylvania, eastern Ohio and West Virginia, at the regular retail prices, to be fixed from time to time by said Straw & Morton; all such sales shall be made for cash on delivery of the machines sold or for negotiable paper at short time. When sales shall be made on time, it is agreed, in order to insure care and diligence on the part of the employee, that all such notes shall be made by the purchaser to the order of said party of the first part and endorsed by the party of the second part and immediately delivered to Straw & Morton, and the said employee shall be liable in case of non-payment of such note or notes at maturity for the amount thereof. The party of the second part is to be allowed as full compensation for all his services and expenses in the said employment and business as follows, viz: Twenty per cent. from the retail prices of machines, as per bills of consignment; the party of the first part agree to furnish horse, wagon and harness. The said Straw & Morton shall not be liable or responsible for any expenses of their said employee, nor shall said employee have any authority to make sales except for cash or for notes of responsible persons, taken upon delivery of the machines

and immediately endorsed to said Straw & Morton as aforesaid. And it is expressly agreed that all machines sold or agreed to be sold as aforesaid shall be and remain the absolute property of said Straw & Morton until paid for by cash or negotiable note in the manner aforesaid. All sewing machines, moneys and notes received or taken into possession by the said party of the second part by virtue of the employment and business aforesaid shall be and remain the absolute property of said Straw & Morton, and the said employe shall be deemed and held as bailee thereof for the purpose and business aforesaid, and all moneys and notes received or taken by said party of the second part shall be forthwith paid and delivered to Straw & Morton. The said party of the second part shall have no power to make contracts or to do any other matter or thing beyond the authority expressly granted by this agreement. Should the party of the second part quit the business before or at the expiration of this article, he shall dispose of all machines or other goods belonging to Straw & Morton in the manner specified above and make return of the same.

" Witness our hands and seals.

                 "STRAW & MORTON,      [seal.]

                 "JAMES W. WANDLING, [seal.]"

On the same day Wandling, with Burr Triplett, as his security, executed to Straw & Morton a bond in these words:

" Know all men by these presents, that we James W. Wandling, —— Pleasants county, West Virginia, and Burr Triplett, of Pleasants county, West Virginia, are held and firmly bound unto Straw & Morton, of Pittsburgh, Alleghany county, Pennsylvania, in the sum of five hundred dollars lawful money of the United States, to be paid to the said Straw & Morton, their heirs or assigns, for which payment, well and truly to be made, we bind ourselves, jointly and severally, and the heirs, executors and administrators of us, and each of us, firmly. Sealed with our seals and dated this eight day of September, A. D., 1870.

" The condition of this obligation is such, that if the above bounden James W. Wandling and Burr Triplett shall well and truly keep and perform in all respects, according to its true intent and meaning, the contract on which this obliga-

tion is endorsed, executed between him, the said James W. Wandling, and said Straw & Morton, dated this eight day of September, 1870, then this obligation to be null and void, otherwise to remain in full force and virtue.

"JAMES W. WANDLING, [SEAL.]
"BURR TRIPLETT.      [SEAL.]
"Witness :—J. H. PAGE."

In pursuance of this contract Straw & Morton from time to time, while Wandling continued in their employment, which was a little more than a year, furnished to him fifteen sewing machines for sale.    On August 5, 1876, Straw & Morton brought their action of debt against Wandling and Burr· Triplett on said bond, in the district court of the United States for the district of West Virginia at Wheeling to recover the amount alleged to be due to them from Wandling under the terms of said agreement.

Their declaration after fully setting out the said bond and its condition together with the substance of the said agreement, averred that Straw & Morton in pursuance thereof furnished Wandling at different times between the 8th day of September, 1870, and the institution of their suit, with fifty Singer Sewing Machines to be by him sold and disposed of according to the terms of said agreement, of the value of $4,000.00, and allowed him for his services and expenses the compensation mentioned in .said agreement, and furnished him with a horse, wagon and harness in pursuance of the terms thereof, and specifically alleging the performance by them of everything, on their part to be done and performed, and the non-performance on the part of Wandling of the matters and things by him to be performed, and particularly assigning three breaches of the condition of said bond, in substance as follows :    First. That Wandling sold seven of said machines of the value of $560.00, and in part payment thereof took and forwarded to them six notes on certain parties named, amounting in the aggregate to $500.00, and that when said notes became .payable, the several makers thereof failed and refused to pay, and never paid the same, nor did ·said Wandling, as by the terms of said agreement he was bound to do.    Second, that Wandling sold ten of said machines and converted the proceeds of the sale thereof

to his own use, amounting to the sum of $600.00, and has failed and refused to pay the same to them. Third, that ten of said machines of the value of $800.00, Wandling kept, and converted to his own use, and has refused to return them or to pay for them; and then concludes in the usual form, demanding the penalty of the bond $500.00, and $500.00 damages. The summons in this case was executed upon the defendant Triplett, and the conditional judgment against him taken at the August rules and confirmed, and a writ of enquiry awarded at the September rules, 1876, but it does not appear that the summons was ever served on Wandling. On September 11, 1877, at a term of said district court being held at Wheeling, the following order was entered in said cause: "This day came the parties by their attorneys, and the said *defendants by their attorney here relinquishing their former plea, acknowledge the plaintiff's action;* whereupon came a jury, &c.," who, upon their oaths do say: "We, the jury, find for the plaintiffs, and assess their damages at $500.00, to be discharged by the payment of $500.00." Therefore it is considered by the court that the plaintiffs recover against the *defendants*, the sum of $500.00 the debt in the declaration demanded, to be discharged by the payment of $500.00, according to the verdict of the jury aforesaid, with interest thereon from September 11, 1877, until paid and their costs by them about their suit in this behalf expended." With their declaration in the said action, the plaintiffs filed a statement of their account with Wandling, showing the articles sold to him, and the amounts received from him in notes and moneys, and also the unpaid notes, with which they claimed he was chargeable under said agreement.

On January 18, 1884, said James W. Wandling brought an action of *assumpsit* in the circuit court of Wood county against said Straw & Morton, proceeding against them as non-residents by order of publication, and sued out an order of attachment and levied the same upon Burr Triplett as garnishee, who appeared and answered, that he was indebted to Straw & Morton in the amount of said judgment recovered as aforesaid in the said district court. The declaration in this case contained the common counts only, and was accompanied with an itemized bill of particulars amounting to the

sum of $516.00 to which was appended the usual notice to the defendants, that on the trial of the action he would rely upon said bill of particulars. On May 11, 1881, the defendants never having appeared the court in lieu of a jury tried the case and gave judgment in favor of Wandling for $516.00 with interest and costs, and ordered Triplett out o the amount due from him on said judgment to pay to the plaintiff his judgment, as aforesaid.

On August 26, 1881, the defendants, Straw & Morton, appeared in said case, and upon complying with the statute in such case made and provided, the execution of said judgment was suspended, and they were let in to make such defence to said action as they might have made, if they had appeared therein before said judgment was rendered; and they thereupon pleaded *non assumpsit*, on which issue was joined, and afterwards on December 29, 1882, they pleaded specially the statute of limitations, and also another plea in these words: "And the defendants for further plea in this behalf say, that the said plaintiff his action against them ought not to have or maintain, because they say that the same identical matters in controversy in this action have been fully heard and determined against the said plaintiff by the consideration and judgment of the district court of the United States for the district of West Virginia, a court of competent jurisdiction for the purpose, in a certain action lately therein pending wherein these defendants were plaintiffs and the plaintiff herein and one Burr Triplett were defendants, in which said action in said district court the plaintiffs therein recovered a verdict and judgment against the defendants therein on the 11th day of September, 1877, for the sum of $500.00, which said judgment remains in full force, not reversed or appealed from, and this the defendants are ready to verify by the record and proceedings in said former action now remaining in said district court of the United States for the district of West Virginia." To both pleas the plaintiff on the 29th of December, 1883, replied generally, and also specially to the plea of the statute of limitations, and issues were joined and the issues were tried by a jury and a verdict returned in favor of the plaintiff " for $516.00 with interest from September 11, 1877, until paid." During the trial, and after all the evidence on

behalf of the plaintiff had been introduced the defendants moved the court to exclude the same from the jury, which motion the court overruled, and the defendants excepted, and filed their bill of exceptions " No. 1." The defendants then offered to introduce in evidence a transcript of the record in the said action of Straw & Morton against James W. Wandling and Burr Triplett in the said district court of the United States, and asked the court to instruct the jury that the same amounted to a bar and estoppel to the plaintiff's claim in this case, but the court being of the opinion from the inspection of said record, that Wandling not having been served with process in said cause, and not having appeared and pleaded thereto, the said record was not binding on him, permitted the same to go in evidence to show the amount recorded by Straw & Morton against Triplett, and the items of account which constitute the amount of said judgment, and for any legal purpose, but not to conclude the plaintiff in this action from any recovery he might show himself entitled to, refused to instruct the jury as prayed for by the defendants' counsel, but did instruct them, " that said judgment of said district court was not binding and conclusive upon Wandling, and was no bar to his right to recover in this action, and that inasmuch as the subject-matter for this action is for credits not allowed Wandling in the matter involved in said judgment recorded against Burr Triplett, his security, the same is not now binding upon Wandling, for the reason that, if Triplett is compelled to pay the judgment so recorded against him, he would have the right to recover the amount so paid, from Wandling, he being the principal debtor." To these several rulings the defendants again excepted and filed their second bill of exceptions. After the verdict was rendered the defendants moved the court to set the same aside and grant them a new trial, because it was contrary to the law and the evidence, and because the court mis-instructed the jury, which motion was overruled, and the defendants again excepted and filed their third bill of exceptions, in which the court certified all the evidence introduced on the trial; and thereupon entered judgment upon the verdict against the plaintiffs in error, for $516.00 with interest and costs.

To this judgment the defendants Straw & Morton obtained a writ of error and *supersedeas*.

*Cole & Miller* and *W. S. Sands* for plaintiffs in error.

*Leonard & Caldwell* and *J. A. Hutchinson* for defendant in error.

WOODS, JUDGE:

Three grounds of error are assigned:

First. The refusal of the court to exclude from the jury the plaintiff's evidence.

Second. The refusal of the court to admit the record of the district court in evidence as a bar to the plaintiff's action, and

Third. The refusal of the court to set aside the verdict, and grant the defendants a new trial.

We will first consider, the second and third errors assigned. The circuit court was pleased to assign as the reason for excluding the use of said record of the district court as a bar to the recovery of the plaintiff's demand, that from the inspection of the said record, Wandling had not been served with process in said cause *and not having appeared and pleaded thereto*, the record was not binding and conclusive on him. It is evident that the court could not have intended to say, that it *appeared from the record,* that Wandling had not appeared and pleaded, for it does clearly appear on the face of the record, that the defendants, (that is Wandling and Triplett), did appear to said action "by their attorney and there relinquished their former plea, and acknowledged the plaintiff's action." Having heard the plaintiff testify before the jury, that he never had been served with process, nor appeared in the case, the court must be understood as saying that it appeared from the *evidence,* that the plaintiff had never appeared to the said action, and that from the *record it appeared* he had not been served with process, in the action and that he had not pleaded thereto, as no plea appears by the record to have been filed therein. We are thus brought face to face with the important question, whether in an action at law, the verity of the record of a court of competent jurisdiction made in a judicial proceeding in regard to a subject, and

between parties subject to its jurisdiction, can be impeached by extraneous evidence? In the case under consideration the circuit court permitted the plaintiff to prove by his own testimony that the fact recited in the record that the defendants, (that is Wandling and Triplett,) "by their attorney relinquished their former plea, and acknowledged the plaintiff's action," was not true, and that he never appeared to said action. It will not be denied that the general rule is that the record of a court of general jurisdiction made in a judicial proceeding determined before it between parties over whom it has acquired jurisdiction, imports such perfect verity as not to admit of averment, plea or proof to the contrary, and is therefore conclusive upon the parties thereto. 1 Coke Litt. 260. The same is equally true as to inferior courts of record in all cases within their jurisdiction. The general rule for jurisdiction is that nothing shall be intended to be out of the jurisdiction of the superior courts, but that which specially appears to be so, and on the contrary nothing shall be intended to be within the jurisdiction of an inferior court, but that which is so expressly alleged. While the district courts of the United States are its inferior courts of limited jurisdiction, they are not on that account inferior courts, in the technical sense of those words, whose judgments taken alone, are to be disregarded. If the jurisdiction be not alleged in their proceedings, their judgments or decrees will be erroneous, and may upon a writ of error or appeal be reversed for that cause but they are not nullities. 7 Rob. N. Pr. 60-61; 2 Cranch p. 126. If a court of general jurisdiction had jurisdiction to render the judgement which it did render, no error in its proceeding which did not affect its jurisdiction will render the proceeding void, nor can such errors be considered when the judgment is collaterally brought in question. *Bermingfield* v. *Reed & Sunderland*, 8 B. Mon. 102; *McGoonn* v. *Scales*, 9 Wall. 154; *Cox, &c.* v. *Thomas's administrator*, 9 Grat. 323.

But in order that the record may have such conclusive validity between the parties thereto, the defendant in such judgment or decree must have been before and subject to the jurisdiction of the court. This jurisdiction of the person may be acquired by the service of process upon him, or by

his voluntary appearance to the proceeding either in person or by attorney; and if he appears to the action for any purpose except to take advantage of the defective execution, or the non-execution of the process, he places himself precisely in the situation in which he would be, if process were executed upon him, and he thereby waives all objections to the defective execution of the process. If he appears for any other purpose, his appearance will authorize a personal judgment against him. *Bank of the Valley* v. *Bank of Berkeley*, 3 W. Va. 386; *Mahany* v. *Kephart* and *B. & O. R. R. Co.*, 15 W. Va. 609; *Burlew* v. *Quarrier*, 16 W. Va. 108; *Hany* v. *Skepwith*, 16 Grat. 410. If then, the plaintiff in this case appeared to the action in the said district court against him and Triplett, and relinquished his plea, *or acknowledged the plaintiff's action*, he thereby submitted himself to the jurisdiction of said court, and authorized it to render a personal judgment against him for the amount justly due from him not exceeding the penalty of his bond. This he certainly did, unless he is authorized in this collateral proceeding to contradict the record by evidence wholly outside of it. If he appeared in person or by attorney it was immaterial whether he pleaded or not, if he "acknowledged the plaintiff's action." This could properly be done, and it is often done, and then the plaintiff has nothing to do except to execute the writ of enquiry as was done in that case.

It has been contended, by eminent jurists, and many adjudicated cases have given color of authority to the proposition insisted upon by the defendant in error here, that where there has been no service of process on the defendant, and he has not personally appeared to the action or proceeding, and the record shows that the defendant "appeared by his attorney," in a collateral proceeding founded upon such judgment, or in a proceeding wherein the effect of such judgment properly comes in question, such defendant may in such collateral proceeding impeach such judgment by proving that he did not in fact so appear by attorney, and that the attorney who assumed authority to appear for him, had no authority to do so. *Starbuck* v. *Murray*, 5 Wend. 148; *Holbrook* v. *Murray*, *Id.* 161; *Shumay* v. *Stettman*, 6 *Id.* 447. In the cases cited and in many others that might be cited, this position has been strongly

maintained, because it seemed unreasonable and unjust that any person should be thus bound by the unauthorized act of a third party, and because the record can not have, and ought not to have, any degree of conclusiveness, for until the party is before the court, it can make no adjudication upon any fact necessary to give the court jurisdiction.   If however, the appearance by attorney which may in one case give the court jurisdiction over the person of the defendant, when he has not been served with process, can be disproved by extraneous evidence, why shall a defendant in another case, who from the record appears to have been served with process, be precluded from showing by similar testimony that he was not in fact so served, or that the process was served upon some other person ?   The same reason that will admit the proof in the first case, would be equally good in the latter case; and if good in both cases no judgment or decree in any case can be said to be the end of controversy. The better opinion in the later cases, now held in States where the former rule at one time prevailed, is, that where the record shows, that the " party appeared by his attorney," it can not be contradicted by extraneous evidence ; and it has been held that a court of general jurisdiction is not bound to set forth on the record the facts upon which its jurisdiction depends, and that whenever the subject matter is a controversy at law between individuals, the jurisdiction is presumed, from the fact that it has rendered the judgment, and the correctness of such judgment can be inquired into only by some appellate tribunal.   *Cox, &c.* v. *Thomas's Administratrix,* 9 Grat. 323.

In *Andrews* v. *Bernhardt,* 87 Ill. 365, it was held that where a decree for the sale of land of a deceased person to pay his debts recites that due notice was given, the finding as to jurisdiction, will in a collateral proceeding be conclusive, and can only be rebutted by *evidence in the record,* and not by extraneous proof.   In *Brown* v. *Nichols,* 42 N. Y. 26, decided in 1870, the court held, that judgment recovered against a defendant, who was not served with process, and had no knowledge of the suit, but for whom an attorney appeared without authority, cannot be attacked for want of jurisdiction in any collateral proceeding, and is binding on such defendant.

In *Reed* v. *Pratt,* 2 Hill 64, it was held by the court of errors

in New York, in 1841, that a judgment of a domestic court of record, importing that the defendant appeared by attorney cannot be avoided collaterally by showing that the appearance was without authority, the party's sole remedy being by motion to the court which rendered the judgment.

In *Harshey* v. *Blackmarr*, 20 Iowa 161, it was held that, although an attorney can not without special authority to do so, admit service of jurisdictional process upon his client, yet it will be presumed in all collateral proceedings, and perhaps, on appeal or in error, that a regular attorney-at-law who appeared for a defendant not served with process, had authority to do so; and to enable a party who has been represented by an authorized attorney to be relieved, he must negative the presumption of authority in the attorney, and ordinarily this must be done by motion, or by bill in equity. In this case, Judge Dillon in delivering the opinion of the Court, says that it is now settled, both in the Federal and State courts with respect to *foreign* judgments, that a judgment debtor in an action against him on the judgment of another State may successfully defend by showing that the attorney who entered the appearance for him had no authority to do so. It has been held otherwise as to domestic judgments, but the soundness of the ruling is doubted. In the case of *Carpenter* v. *The City of Oakland*, 20 Cal. 439, it was held, that in an action at law upon a judgment of a court of general jurisdiction, the defendant can not show as a matter of defence at law, that the court did not acquire jurisdiction of the defendant, or that its jurisdiction was fraudulently acquired except by an examination of the record; and that if an attorney appears for a defendant in a court of general jurisdiction, this appearance gives the court jurisdiction of the defendant, and if the attorney appeared without authority, that fact can not be shown as a defence at law, in a suit upon the judgment. Sanderson, Justice, delivering the opinion of the court in the case just cited, discussing the question whether at common law in an action of debt upon a judgment (domestic) of a court of general jurisdiction, the defendant could, show fraud or want of jurisdiction by extraneous evidence, said: " The question is in our judgment too well settled by authority to require any argument founded on prin-

ciple.　Mr. Chitty states the rule to be that neither the defendant himself, nor his bail or sureties can plead that the judgment was obtained against him by fraud, though it may be pleaded that a judgment against a third person was so obtained (1 Ch. Plead. 486.)　The validity of the judgment can not be collaterally attacked on the ground of fraud, nor on the ground that the court had no jurisdiction, whether the supposed want of jurisdiction is alleged as an element of fraud or not, unless the want of jurisdiction appear upon the face of the record. The maxim of the law is, that the judgment of a court of general jurisdiction, imports absolute verity, and its truth can not be questioned, either by showing otherwise than by the record itself, that the court had no jurisdiction, or that its jurisdiction was fraudulently procured.　Both upon the merits of the cause of action, and upon all jurisdictional facts, the record imports absolute verity in law, and is to be tried by the court upon inspection of the record only.　Hence at law, the validity of the judgment can be put in issue by the plea of *nul tiel record* only, and if on inspection it turns out that the plea is not true, there is an end of the controversy.　If its validity is to be impeached from without, some other appropriate remedy must be found." The same doctrine is laid down in Freeman on Judgments, sections 128 and 131.　The case of *Warren & Dallon* v. *Lusk*, decided in 1852, reported in 16 Mo. 102, was an action of debt, brought in Missouri against the defendants upon a judgment recovered againt them in Illionis, and the defence was that the defendant had never been served with process, and had never appeared or authorized any one to appear for him in the original cause, but the record in that cause stated that the defendants filed their demurrer, and at a subsequent day the record recited, that " this day came the parties by their solicitors, the defendants having filed their demurrer to the plaintiff's bill," &c.　The demurrer was overruled and plaintiffs had leave to amend their bill, and J. II. Lusk failing to answer, the bill as to him was taken for confessed, and he was adjudged to pay the plaintiff $3,238.00, but the court held " that under the act of Congress of May 26, 1790, in a suit upon a judgment of another State, whose laws as to the effect of judgments are the same as our own when it appears from the face of the record that the defendant appeared by his attorney, evidence to show that

the attorney had no authority to appear, was inadmissible.

The rule of law laid down in these cases, must apply with equal force to judgments of the district court of the United States for the district of West Virginia, on subjects, and between parties subject to its jurisdiction, in the same manner and to the same extent as to the judgments of the circuit courts of this State, in all cases where they have concurrent jurisdiction, and to that extent at least, the judgment of said district court must be held to be a domestic judgment of this State.

We are therefore of opinion that in an action founded upon a judgment of the district court of the United States, for this State, or in any other proceeding at law between the parties to such judgment wherein the same may be used, and it appears by the record in said cause that the defendant had "appeared by attorney" in the original action or proceeding in which the judgment was recorded, such defendant can not show as a matter of defence at law to invalidate such judgment, that the said attorney appeared without authority; and that such a judgment is a domestic judgment of this State, and as to all matters within the jurisdiction of said district court, its judgments are entitled to all the legal presumptions arising in favor of the judgments of the circuit courts of this State.

The circuit court erred in refusing to admit the transscript of the record of the suit in the district court, as a bar to the plaintiff's demand, so far as the evidence might show, that the items of his account, had been in fact adjudicated in that judgment, and also in permitting evidence to be introduced to show that the plaintiff had not in fact appeared by attorney to the said action, and "acknowledged the plaintiff's action" therein. Let us now inquire whether the plaintiff's demand in this case was in any respect, or to any extent barred by the proceedings had in the action of defendant against him and his surety, Triplett, in said district court. The liability of Wandling to the plaintiffs in error, grew out of his agreement made with them on September 8, 1870, and consisted of the amounts due to them for sewing machines delivered to him, for moneys received from the sales thereof and not paid over to them, or for the notes taken from purchasers and not paid by them for which by the express terms

89

of his agreement, he became personally responsible as guarantor or endorser, or for machines unsold, and not returned to them, and the bond of $500.00 executed by him and his surety Triplett, was only a security for the performance on his part of that agreement, and the plaintiffs in error were only entitled to recover thereon, so much money as they were able on the trial to prove was due to them upon that agreement. In order to recover in their action they were obliged to allege and prove on their part, that they had fulfilled and performed all the terms and conditions on their part to be performed, which included the furnishing of the horse, wagon and harness, and the payment of the stipulated compensation to Wandling for his service, and in addition the amount due to them from him still remaining unpaid. The transcript of the record in that case, contains an itemized statement of machines and fixtures, furnished to Wandling under said agreement, with the prices affixed to each item, and all moneys and notes received and the notes so received, which were unpaid by the makers, and justly chargable to him under the terms of said agreement, and on the trial such proof was introduced as warranted the jury to find by their verdict, that by reason of these matters, Wandling was indebted to them in the sum of $500.00, for which the court entered judgment in favor of the plaintiff in error, against Wandling and Triplett on their said bond.

The defendant in error filed with his declaration a bill of particulars, containing the items of his claim against the plaintiffs in error, which he desired to prove on the trial of his action. Upon examination of the items of his account we find an item of $75.00, for the use of horse and wagon, another of $70.00 for a machine alleged to have been returned and another of $12.00 for commission on one machine, all the other items of his account appear on the account which the plaintiffs in error filed with their declaration in their action in said district court. It is thus apparent from the face of the bill of particulars, that every item thereof grew out of and formed part of the account sued upon, in the district court, and they were necessarily passed upon by the jury in that case. But if there ever was any room to doubt the correctness of this conclusion, it is entirely removed by

the testimony of Wandling himself contained in the certificate of the evidence made by the circuit court, in the third bill of exceptions; for he deposes, "that the judgment they (*i. e.* the plaintiffs in error) obtained in the United States Court against Burr Triplett on my bond was for many items in my account here, which I did not owe them, and if he should have to pay it I would have to re-pay him. The suit in the Federal court was on the bond executed by me with Triplett as security; attached to it, was the contract between myself and said Straw & Morton. This suit is not brought on the contract but for the purpose of collecting or obtaining judgment for my account, for money already paid the defendants under said contract, and for what they subsequently obtained a judgment against Burr Triplett as my security and myself in the district court of the United States for the district of West Virginia, in which judgment they have not allowed me credits for my account, and if they collect said judgment off Triplett, as my security, I will be compelled to re-pay him." Admitting everything to which Wandling has testified to be true, as stated, has he shown any cause of action against the plaintiff in error? Has he not on the contrary, clearly shown, that whatever claim he might have once had, for the items of his account, they have been finally adjudicated by the judgment of a court of competent jurisdidtion.

It has been held that the effect of a judgment as a bar or estoppel against a prosecution of a second action upon the same claim or demand rendered on the merits, constitutes an absolute bar to a subsequent action. It is a finality to the claim or demand in controversy concluding parties and those in privity with them not only as to every matter which was offered or received to sustain or defeat the claim, but as to any other admissible matter, which might have been offered for that purpose. Thus, for example, a judgment on a promissory note, is conclusive as to the validity of the instrument, and the amount due upon it, although it be subsequently alleged that perfect defences actually existed of which no proof was offered, such as forgery, want of consideration or payment. The judgment is as conclusive so far as the future proceedings at law are concerned, as though the defences never existed. Such a judgment estops not only as to every

ground of recovery or defence actually presented in the action, but also as to any ground which might have been presented to the demand or claim in controversy, and such demand or claim having passed into judgment cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.  *Cromwell* v. *County of Sac*, 4 Otto. 350; *Loring* v. *Mansfield*, 17 Mass. 394; *Marriott* v. *Hampton*, 17 Tenn. 265; *Benttz* v. *Morse*, 14 Johns. 468, 2 Rob. (N. P.) 476; *Blair* v. *Bartlett*, 75 N. Y. 150; *Davis, &c.* v. *Talcot*, 12 N. Y. 184.  From a review of these authorities, we are of opinion, that the evidence introduced on the trial of this action is clearly insufficient to sustain the verdict rendered herein, and the same for this reason ought to have been set aside, and that for the same reason the motion of the plaintiff in error, to exclude from the jury the testimony offered by the defendant in error, ought to have been sustained.

We are therefore further of opinion, that for the errors aforesaid the judgment of the circuit court of Wood county rendered herein, on January 18, 1884, must be reversed with costs against the defendant in error.  And this Court now proceeding to render such judgment as the said circuit court should have rendered, it is considered that the verdict of the jury be and the same is hereby set aside, and this cause is remanded to the said circuit court for a new trial to be had therein in accordance with the principles settled in this opinion, and further according to law.

REVERSED.   REMANDED.