# CHARLESTON.

WICK *et al. v.* DAWSON *et al.*

Decided December 15, 1900.

1. APPEAL—*Res Adjudicata.*
    Points adjudicated by this Court on a former appeal must be regarded as *res adjudicata* during the further progress of the cause. (pp. 470, 471).

2. MARRIED WOMAN—*Liable for Debt.*
    A personal decree against a married woman for a debt for which she is not personally liable is erroneous. (p. 472).

3. FOREIGN DECREE—*Want of Jurisdiction.*
    If, in answer to plaintiff's claim, a married woman sets up plea of freedom from coverture by reason of a decree of divorce by a foreign court, plaintiff may impeach such decree for want of jurisdiction whenever it is offered in evidence. (p. 473).

4. AFFIRMATIVE RELIEF—*Replication.*
    If the defendant does not ask affirmative relief, it is error to permit the filing of a special replication, but, if no evidence is offered in support thereof except such as is admissible in support of a general replication, such error will be deemed harmless. (p. 473).

5. ERRONEOUS ASCERTAINMENT—*Appealable.*

An erroneous ascertainment of interest in excess of one hundred dollars, when an adjudication, and not a mere clerical error, is appealable to this Court. (p. 475).

6. PURCHASER—*Formal Party.*

It is not necessary to make a *pendente lite* purchaser a formal party to a suit. If such purchaser has any just grounds of defense thereto, he can make himself a party, and bring it to the attention of the court. (p. 476).

7. PENDENTE LITE PURCHASER—*Erroneous Decree.*

A *pendente lite* purchaser, who pays the subject-matter of litigation over to the debtor by virtue of a decree of the circuit court releasing a *lis pendens*, which decree is afterwards appealed to and reversed by this Court, is not protected by such erroneous decree. (p. 475).

Appeal from Circuit Court, Jefferson County.

Bill by Henry Wick & Co. against Charles L. Dawson and others. Judgment for plaintiff. Defendants appeal.

*Modified.*

D. C. WESTENHAVER and GEORGE BAYLOR, for appellants.

McDONALD & BECKWITH, for appellees.

DENT, JUDGE:

The case of *Wick & Co.* v. *Ida M. Dawson* and *Charles L. Dawson,* from the circuit court of Jefferson County, was here before. 42 W. Va. 43. By reference thereto the cause of action will be found fully stated, together with a copy of the paper on which the suit is founded. After it was sent back for further proceedings, the defendants filed their answers and depositions were taken. On final hearing the circuit court entered up a decree in favor of the plaintiffs against the defendants personally for the sum of seven thousand four hundred and forty-one dollars and two cents, and directed a renting of the place called Claymont until the debt, interest and costs are paid. The defendants again appeal, in which the *pendente lite* purchaser, Pauline Dawson, joins.

 . The first error assigned is that the contract sued on is entirely void. As a legal proposition this question was settled on the former appeal, and is now *res adjudicata* so far as this case is

concerned.  The court held that "such contract is not *per se* a
fraud on the due administration of justice, and unless such fact
is made to appear it is binding upon and enforceable against the
purchaser.

It is as follows:  "The real estate described in the petition
in this case, having been advertised and sold to the undersigned,
Charles L. Dawson, for forty-seven thousand (47,000) dollars,
and the said Dawson desiring to have the sale set aside and the
property offered again for sale by the sheriff, and the defendants,
Henry Wick & Co., objecting to such resale, it is agreed by the
undersigned, Charles L. Dawson and Ida W. Dawson, his wife,
that in consideration of the defendants (Wick's) consenting that
said sale may be set aside and the property again offered, that
they, the said Charles L. Dawson and Ida W. Dawson, will in-
demnify said Wick and save them harmless from all loss, which
they may sustain by reason of setting said sale aside, and having
the property again offered.  And will pay to said Wick whatever
difference there may be in the amount, which they would now
realize if the present sale were confirmed and the amount bid
paid, and what they may hereafter realize upon a resale of the
property, so that said Wick will not lose anything by consent to
have said property again offered.  Cleveland, Ohio, May 11, 1899.
Charles L. Dawson, Executor of Estate of A. M. Harman,
dec'd, Ida W. Dawson."

,When the case went back the defendants in their answers
again claimed it to be void as contrary to public policy and the
due administration of justice, but they introduced no new fact
showing it to be so, either in the allegations or proof.  Charles L.
Dawson had the right to bid on the property for the purpose of
trying to preserve his wife's separate estate.  This is why he bid
in the property, and when it was sold to him he did not want the
property, but hoped that on a resale it would bring a larger price.
Henry Wick & Co., the only creditors who would be affected by
the sale other than his wife, would not agree to such resale, un-
less they would agree to save them harmless, as they believed the
property had brought sufficient to cover their debt.  They then
entered into the agreement aforesaid.  It was a contract that in
no way affected anybody but themselves.  None of the subse-
quent creditors were interested, as the property did not bring a
sufficiency to reach their debts, and the only prior creditor was
perfectly safe, and on a final resale purchased the property at a

sum sufficient to pay its debt. The only thing accomplished by the agreement was to transfer the liability of the debt of Henry Wick & Co. from the property to the shoulders of Charles L. Dawson and wife, whose duty it became to see that the property on resale brought sufficient to cover it to the extent secured by the sale, or they must bear the loss. It was not a contract, not a bid, but only a contract to relieve themselves from responsibility, and it amounts to the same thing as if they had assigned their debt to Charles L. Dawson and wife. The consideration was that they were to be relieved from the purchase, for undoubtedly Dawson was acting in the interest of his wife, as is shown by his signing the contract in the capacity of executor. If there was any wrong intent on the part of Dawson in bidding on the property plaintiffs are not shown to have any knowledge thereof, or to be *particeps criminis* therein, nor is there any *mala fides* on their part apparent in the case. Their only object was to legally secure the payment of their debt. In releasing Dawson it is not apparent they injured anyone but themselves. This question was fully settled on the former appeal. *Seabright* v. *Seabright.* 33 W. Va. 152, and *McCoy* v. *McCoy,* 29 W. Va. 795; *Wandling* v. *Straw,* 25 W. Va. 692; *Henry* v. *Davis,* 13 W. Va. 230; *Camden* v. *Werninger,* 7 W. Va. 528.

The second error assigned is the personal decree against each of the defendants.

As to Ida W. Dawson, this is plainly erroneous, and so admitted by the plaintiff's counsel. They claim, however, that she did not join in the appeal. There is no evidence of this fact before this Court, except the admission of counsel in argument, and she certainly does not want an erroneous personal decree standing against her. It is also apparent that Charles L. Dawson in all his dealings in this matter was acting in behalf of the estate of which his wife was the sole legatee, and in his executorial capacity. This is admitted in the bills and shown in the evidence. Where a fiduciary has acted in good faith for the protection of the estate which he represents a court of equity will always protect him from liability unless loss has been occasioned by his *laches* or negligence. The general rule is that an executor cannot bind the estate he represents by the execution of contracts like the one in controversy, but can only bind himself individually, though he sign it as executor, and it is for the benefit of the estate. 11 Am. & En. En. Law (2 Ed.) 932.

This rule is for the protection of the estate, and not the other party to the contract. The plaintiffs in this case have not sought to hold him personally, but only in his executive capacity as shown by the allegations of their bill and their evidence in support thereof, and the sole legatee or heir of the estate and who has received it from such executor is a party to the contract as a joint obligor with the executor, thus plainly showing an intention to bind the estate alone. It would be inequitable to hold Charles L. Dawson individually liable contrary to the express understanding and agreement between all the parties thereto, if the terms of the contract did not so plainly bind him, affording no avenue of escape therefrom.

The next two assignments of error are that the termination of the coverture ended the separate estate of Ida W. Dawson, and that a special replication was permitted to be filed to answers which did not seek affirmative relief. The special replication was improperly filed, yet this is harmless error, unless evidence was admitted thereunder not proper under a general replication. The defendants in their answer claimed that Ida W. Dawson had obtained a divorce from her husband, and being free from coverture the rents and profits of her real estate were no longer liable to plaintiff's debts. Plaintiff denied this allegation by general replication. In support thereof the defendant offered the record of county court of Arapahoe County, Colorado. Plaintiffs then proved that at the time that such alleged divorce was granted, the defendants were both residents of the State of West Virginia, and claimed the divorce to be void. The defendants insist that this evidence was inadmissible under the general replication. The decree of divorce was void. This was the State of their residence, and here alone could they be freed from the bonds of matrimony. A decree obtained elsewhere is invalid and will be wholly disregarded. 2 Black on Judgments, s. 927. Such a judgment or decree may be impeached for want of jurisdiction whenever offered in evidence against a stranger thereto who would be prejudiced thereby. Being neither a party to the divorce suit or entitled to manage the same, nor appeal from the judgment or decree, such stranger is allowed by law to impeach it whenever it is attempted to be enforced aginst him. 2 Freeman on Judgments, ss. 334, 335. The decree of divorce was properly impeached under the general replication, and the filing of the special replication in no man-

ner injured the defendants. *Dower* v. *Seeds,* 28 W. Va. 113; *Chalfant* v. *Martin,* 25 W. Va. 394.

The fifth error assigned is the failure to first subject the personal property of Ida W. Dawson to plaintiff's debt.

The proof shows no personal property that could be reached by decree of court. While it is admitted she had funds coming to her from sale of Claymont, reserved for the satisfaction of this claim, and which the purchaser paid to her without waiting the final result of this litigation.

The sixth assignment of error is the excessive amount of the decree, being for seven thousand four hundred and forty-one dollars and two cents instead of for six thousand nine hundred and ninety dollars and fifty cents. In this assignment the appellants are right. James W. Stewart testifies, "Since the last adjournment of the taking of the depositions I have made an examination of the record in this case, and find that The Society for Savings, the plaintiff had the first and best lien in the case, and that Henry Wick & Company and Albert M. Hannon have the second lien in that case, their claims being founded upon notes given at the same time and due at the same time, and secured by one mortgage executed at the times the notes were given. On this question on the filing of their reply brief plaintiff's counsel evidently overlooked the evidence and their admissions in their pleadings. The Ohio law of course governs as to this question, as the contract was made and was to be performed there. The law of the place where made and to be performed is a part of the contract.

Interest is improperly allowed in the decree from the 25th day of June, 1887, the date of the note, instead of from the 5th day of April, 1889, the day of the sale.

The appellants insist further that the plaintiff must lose also a proportionate amount of what they would have received if the resale to Gray, Kingsman and Collins at the price of forty-five thousand three hundred and thirty-four dollars had been confirmed. By virtue of the contract in controversy, it became the duty of the obligors to see that this sale was properly reported and confirmed, they having relieved plaintiffs from the necessity of doing so, and if there is any loss therefrom, they and not the plaintiffs must bear the same, as it is their default. As the court and its officers were unaware of their contract, they were under no obligations to protect appellants, but appellants

should have protected themselves. Seventh and last error assigned is that the court erred in charging Claymont in the hands of the grantee, Pauline Dawson, and in not under the circumstances disclosed by the record, requiring the plaintiffs to amend their bill, making her a party. She could have made herself a party by petition if she had a just defence to plaintiff's suit, but there is nothing in the record that would require plaintiffs to make her a party. She was strictly a *pendente lite* purchaser, both by reason of the *lis pendens* filed, and by reason of knowledge of facts and circumstances sufficient to put her on her guard. A *lis pendens* is only necessary to bind innocent purchasers having no notice of the suit. It is unnecessary as to a party with notice. The fact of notice may be inferred from circumstances as well as proved by direct evidence. *Farley* v. *Bateman,* 40 W. Va. 540; *Newman* v. *Chapman,* 2 Rand. 93; *French* v. *Loyal Co.,* 5 Leigh 635; 16 Am. & En. En. Law 790.

Where the facts and circumstances are such as to raise presumption of notice, the burden of proving want of notice is shifted to the alleged innocent purchaser. Pauline Dawson was the sister of Charles L. Dawson. Could it be possible that he failed to inform her of the pending litigation? He says in his testimony that in the sale to her a part of the purchase money was retained to pay the plaintiff's claim, thus showing she had notice in time to save herself. This is entirely independent of the *lis pendens. Webb* v. *Bailey,* 41 W. Va. 463. It is therefore a violent presumption from the facts and circumstances that Pauline Dawson had notice of plaintiff's suit independent of the *lis pendens,* and if she had not, the burden was cast on her of proving want thereof. She did have notice of the *lis pendens,* and thereby not only constructive but actual notice of the suit, for she withheld the purchase money until the *lis pendens* was released by order of the court. Any time she could have filed her answer and set up want of notice, but holding the purchase money, it would have done her no good. She seeks to escape liability by reason of the release of the *lis pendens* by virtue of the order of the circuit court. This order was reversed and annulled by this Court on appeal, and is as though it had never been. 2 Freeman on Judgments, s. 481. It affords her no protection as she is presumed to know that the plaintiff had the right of appeal therefrom for two years, and that she could have continued to withhold the money until the time limit had

expired, or she had been indemnified against the same. She could also have made inquiry of the plaintiffs as to their intention with regard to an appeal. It was not their duty to inform her, because the law informed her as to their rights, and she should have presumed they intended to avail themselves thereof until they informed her otherwise. It is unnecessary to make a *pendente lite* purchaser a party to the suit. If he sees any reason to be, having notice of the suit, he can make himself a party. *U'Conner* v. *O'Conner,* 45 W. Va. 354; *Shumate's Exr.* v. *Crockett,* 43 W. Va. 491; *Stout* v. *Mercantile Co.,* 41 W. Va. 339; *Lynch* v. *Andrews,* 25 W. Va. 754; *Harman* v. *Hyram's Admr.,* 11 W. Va. 511. This is very hard money to pay, and if the Court could under any just rule of law relieve the defendants therefrom, it would most willingly and cheerfully do so. Ida W. Dawson from whom it primarily comes by the Ohio sale not only is made to pay plaintiff's debt to the extent she became surety therefor, but also lost her own debt, more than double in size. It was an unfortunate contract for her. There are many unfortunate contracts in this life, against which the courts though ever so willing, can give no relief, although they may end in suffering, sorrow, shame, misery and bankruptcy. The many mistakes caused by the frailties of human nature can never be corrected or equalized except by Him who made man, though little less than the angels, so weak, so short-sighted, so imperfect, and so powerless. To Him alone can we look for perfect equity. Human justice can never be anything but the shadow of the real substance, an imitation of things beyond conception, and a dimly reflected light of the great unknown. The best we have is the best we can possibly give. The decree in this case in so far as it makes a personal decree against Ida W. Dawson must be reversed and in so far as it gives interest from the 25th day of June, 1887, instead of from the 5th day of April, 1889, aggregating seven thousand four hundred and forty one dollars and two cents must be corrected so as to make the true amount six thousand nine hundred and ninety-nine dollars and fifty cents, with interest from the date of the decree, February 23, 1900, and as thus corrected, in all other respects be affirmed, at the cost of the appellee.

*Modified.*