THOMAS McHUGH *v.* FIRST HUNTINGTON NATIONAL BANK

(No. 8850)

Submitted May 2, 1939. Decided June 13, 1939.

*Robert E. White* and *Lilly & Lilly,* for plaintiff in error.
*C. W. Strickling, Edmund A. Marshall,* and *Fitzpatrick, Brown & Davis,* for defendant in error.

RILEY, JUDGE:

In this action for personal injuries, plaintiff prosecutes writ of error to a judgment of the Circuit Court of Cabell County in favor of the defendant, based upon a jury verdict.

The case was before this Court on a prior writ of error, and it is reported in 118 W. Va. 700, 191 S. E. 844. On the former trial, the circuit court directed a verdict in defendant's favor on the ground that the plaintiff's opening statement showed he was not entitled to recover. The opening statement disclosed that defendant's building manager, shortly before the accident, informed plaintiff that the contractor and his workmen were to have exclusive use of the freight elevator in defendant's building, without interference from any of defendant's employees.

Defendant bank had entered into a contract with one Mead, an independent contractor, whereby Mead was to furnish and install certain doors in the arcade or lobby floor of defendant's building. Mead employed plaintiff and one Persun to assist in the work. The equipment to be used in connection with the work was stored in the basement and on the second floor of the building. Three of the four elevators in the building were for passenger traffic and ran from the first or lobby floor to the twelfth floor. The fourth elevator, used primarily for freight, ran from the basement to the twelfth floor. During the progress of the work, it was necessary that the equipment be brought by the freight elevator from the places where it had been stored to the lobby floor. By arrangement with the building manager, the installation of the doors was started at six o'clock on the evening of December 6, 1934. The manager told the plaintiff that he could use the freight elevator to assemble the equipment and ma-

terial, but the assemblage should be done by eight o'clock, at which time the night crew of janitors came to work.

Pursuant to this arrangement, plaintiff and Persun went to the building about six o'clock to begin their work. When they arrived at the bank, the freight elevator was at the lobby floor and the door in front of it was closed. This door was of metal construction with frosted opaque glass. It could only be opened from the outside by the insertion of a metal rod about ten or twelve inches long in a little hole or slot in the middle of the elevator door. By working this rod in a certain direction, the latch of the door could be released so that the door would be opened, and a person could place his fingers in the crack of the door and slide it open. Plaintiff and Persun opened the door of the elevator and took it to the second floor, where they secured a part of the equipment, and then returned to the lobby floor and unloaded it. While unloading the equipment, the elevator was held open by a wedge. The two men then went to the basement to examine the doors which they were to install and thence to the sixth floor for some ladders and other equipment to be used in their work. Then they returned to the lobby floor and unloaded the equipment they had obtained from the sixth floor, turned off the switch and light inside the elevator cab and closed the elevator door.

In the lobby in which plaintiff was working, there were three clusters of lights, each containing five bulbs. These lights were placed in a row running east and west in the lobby which was fifty feet long and eighteen feet wide. One cluster was midway between one of the passenger elevators and the freight elevator and about eight feet from the latter. Plaintiff and his fellow-workmen began their installation work after the equipment was unloaded. While proceeding with this work plaintiff was west of the freight elevator from six to twelve feet. During most of the time, he was facing in a westerly direction. Thus, the freight elevator was to his left and rear. Shortly after the work began, plaintiff started to get an electric

drill which was located in the basement. He got the iron rod which was located by the mail box, inserted the rod in the hole in the door and opened the door of the elevator so he could place his fingers on the left hand in the crack so as to slide the door open. While opening the door, he turned partly so as to have his left side and back to the elevator. While doing so he was pointing and telling Persun where the electric drill could be plugged in. Thus, while turning, pointing and advising Persun, plaintiff opened the door wide enough to enter, stepped sideways into the opening and fell a distance of about twenty-two feet onto the concrete floor at the bottom of the elevator pit. Between the time plaintiff had unloaded the equipment and the time he undertook to re-enter the elevator, one Perkins, an electrician employed by the defendant, had moved the elevator to one of the upper floors of the building.

At the time of the accident, one of the passenger elevators was in use and located on one of the upper floors of the building. Plaintiff contends that the defendant had given to him, or Mead's crew of workmen, exclusive use of the elevator until eight o'clock. The lobby was used less around six o'clock than at other times, and the freight elevator was seldom used between six o'clock and the time the night crew came on about eight o'clock, unless tenants were moving in or out or shipments of freight were received at the building. Plaintiff testified that he told Hollobaugh, the building manager, during the course of a conversation concerning the work: "We have to use this elevator to get the stuff in here and not to be interfered with", to which he received the reply, "Get the stuff up before eight o'clock". Hollobaugh, however, testified that the elevator was needed twenty-four hours a day and he could not give the plaintiff its exclusive use. He further stated that he did not directly or indirectly tell plaintiff that the use of the elevator was to be exclusive. This question as to the use of the elevator having been submitted to the jury, we are unable to say as a matter of law that plaintiff's testi-

mony concerning the rather indefinite conversation had with Hollobaugh was sufficient to override the latter's unequivocal statement denying that the use of the elevator was to be exclusive.

Perkins testified that he did not advise plaintiff or anyone else that he was going to use the freight elevator. He did, however, testify that plaintiff looked at him and smiled when he started to take the elevator. On the contrary, both plaintiff and Persun denied having seen Perkins on the evening of the accident, and testified that they had not been advised by Perkins that he was going to use the elevator. They further testified that they did not know the elevator had been moved since they had last used it.

The opinion of this Court on the former hearing discloses that the question of the right of plaintiff and his fellow-workman to the exclusive use of the elevator was paramount. That being so, the right of plaintiff to the exclusive use of the elevator, as a condition precedent to recovery, is the law of this case. *William C. Atwater & Co.* v. *Collieries Co.,* 119 W. Va. 549, 195 S. E. 99. Accord: *White* v. *Lazelle,* 99 W. Va. 109, 128 S. E. 303; *Pennington* v. *Gillaspie,* 66 W. Va. 643, 66 S. E. 1009; *Butler* v. *Thompson,* 52 W. Va. 311, 314, 43 S. E. 174; *Wick* v. *Dawson,* 48 W. Va. 469, 37 S. E. 639; *Seabright* v. *Seabright,* 33 W. Va. 152, 10 S. E. 265; *Henry* v. *Davis,* 13 W. Va. 230; 5 Corpus Juris Secundum, 1499, section 1964.

Aside from the holding on the former decision, it is indeed quite difficult for us to see how the defendant bank would be liable in the absence of plaintiff's right to the exclusive use of the elevator. If plaintiff did not have such right, of course, he would have every reason to assume, and it was his duty to do so, that the elevator may not remain at the floor upon which plaintiff and Persun were working.

Plaintiff objects to defendant's instruction No. 3, which told the jury that unless they should believe from a preponderance of the evidence that the plaintiff and his fellow-workman had exclusive use of the freight elevator

at the time he was doing the work described in the evidence to the extent that the employees of the bank could not use the elevator at such time, then they should find for the defendant. This instruction fairly presented to the jury the question of plaintiff's right to rely upon assurances of the exclusive use of the elevator. We see no error in it. In fact, it presents the only ground of recovery available to plaintiff. On the basis of this instruction, the jury having solved the factual question in defendant's favor, its finding should not be disturbed on this writ of error.

The judgment of the circuit court, therefore, is affirmed.

*Affirmed.*

HATCHER, JUDGE, dissenting:

It is quite true, as the majority opinion states, that plaintiff's exclusive use of the elevator was paramount in our former decision; but that was due to plaintiff's expressed expectation to prove such use. I observe no expression in that opinion limiting his right of recovery thereto.

Plaintiff testified as to the following conversation with defendant's building manager: "I said, 'Joe we are talking of putting the doors in between the arcade and the lobby this evening', and he said 'yes' and I said 'we have to use this elevator to get the stuff in here and not be interfered with' and he said, 'get the stuff up before eight o'clock.' " The manager did not specifically deny this conversation. He testified regarding it only as follows: "As I remember I told him (plaintiff) Mr. Mead wanted to start the erection of the doors, and he said, 'what about the freight car', and I said 'it will be here for you to use.' " With deference, I submit (1) that the only reasonable construction of the conversation is that plaintiff was not to be interfered with in the use of the elevator before eight o'clock; and (2) that in any event, whether plaintiff was negligent under the circumstances was a jury question and not a matter of law as defendant's instruction No. 3 assumed.